UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JOY KLINE, Personal Representative
of the Estate of Jeffery Kline, Deceased,

    Plaintiff/Counter-Defendant,

v.

GULF INSURANCE COMPANY,

    Defendant/Counter-Plaintiff
    and Third-Party Plaintiff,

v.

CECIL HAMLIN

    Third-Party Defendant.
_____/

Case No. 1:01-cv-213

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant/Counter-Plaintiff Gulf Insurance Company ("Gulf"), and Plaintiff/Counter-Defendant Joy Kline's competing motions for summary judgment. For the reasons that follow, the Court will grant Defendant Gulf's Motion for Summary Judgment and will deny Plaintiff's Motion for Summary Judgment.

**I.     Background**

The facts of this dispute have led the parties down a long and protracted road of litigation. This case began on November 3, 1997, when Plaintiff Joy Kline's husband was killed after his automobile collided with a truck driven by Third-Party Defendant Cecil Hamlin. The truck was owned by Builders Transport, Inc., ("BTI") and insured through Reliance National Indemnity, Company, ("Reliance") and Defendant Gulf.

On May 21, 1998, BTI petitioned for bankruptcy protection; however, Plaintiff was given limited relief from the United States Bankruptcy Court to bring a wrongful death action in Michigan state court. In January 2001, the parties settled the wrongful death action for $3.2 million. In March 2001, Plaintiff sought writs of garnishment against both Reliance and Gulf.

Reliance filed a garnishment disclosure indicating that it owed Plaintiff $1 million, based upon its assertion that it covered BTI for $1 million over a $1 million loss-corridor deductible ("deductible") and a $1 million self-insured retention ("self-insurance")[1] provided for in the policy. Gulf then filed a garnishment disclosure, assessing that it owed Kline $200,000 as its part of the $3.2 million settlement. Both insurers paid these amounts plus statutory interest to Plaintiff.

Having received only $1.2 million of her $3.2 million settlement, Plaintiff filed the present suit against Gulf which was removed to this Court.[2] Plaintiff's First Amended Complaint contained claims of garnishment, common law and statutory bad faith, breach of contract, Michigan Consumer Protection Act violations, ordinary negligence, and negligent performance of contract. Gulf counterclaimed for declaratory relief against Kline and filed a third-party claim against Hamlin requesting a declaration regarding the extent of insurance coverage. On the parties' competing motions for summary judgment, this Court found Gulf had fulfilled its obligation as a supplemental insurer, which then led to a grant of Gulf's Motion and a denial of Plaintiff's Motion for Partial Summary Judgment.

---

[1] BTI was an authorized self-insurer pursuant to 49 U.S.C. § 13906(d) and 49 C.F.R. § 387.309.

[2] Plaintiff also sued Reliance in state court, which was also removed to this Court. However, the Reliance action has been stayed since July 19, 2001, as Reliance was placed in rehabilitative proceedings by the Pennsylvania Insurance Commissioner.

Plaintiff's appeal to the Sixth Circuit Court of Appeals sought review of this Court's findings on Gulf's declaratory judgment and on her garnishment, statutory bad faith, and breach of contract claims.[3] *Kline v. Gulf Ins. Co.*, 98 Fed. Appx. 471, 472 (6th Cir. 2004). The Court of Appeals reversed in part this Court's grant of summary judgment in favor of Gulf. *Id.* at 473. While the Court of Appeals affirmed this Court's conclusion that the umbrella insurance policy Gulf retained for BTI attached when BTI's liability reached the $3 million mark, the appellate court disagreed with this Court's finding that no genuine issue of material fact existed as to whether the BTI-Gulf insurance policy contained an Interstate Commerce Commission MSC-90 endorsement.[4] *Id.* The Court of Appeals further disagreed with this Court's disposition of Plaintiff's garnishment, statutory bad faith, and breach of contract claims because of those claims connection to the existence of a MSC-90 endorsement. *Id.*

In remand, the Court of Appeals narrowed the issues on the MCS-90 endorsement to whether an endorsement existed, and if so, what effect such an endorsement has on an umbrella insurer's attachment point. *Id.* at 477.

**II.     Standard of Review**

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must consider the record as a whole by reviewing all

---

[3] Plaintiff's remaining claims were not appealed.

[4] Regulations promulgated by the Interstate Commerce Commission, now administered by the Department of Transportation, require that authorized carriers must have insurance or some other form of surety conditioned to pay any final judgment against the motor carrier for any of the injuries it may cause under the carrier's licence. 49 C.F.R. § 1043.1(a) (1995). A MCS-90 endorsement is a way of meeting DOT requirements. *Id.* at § 387.7(d).

pleadings, depositions, affidavits, and admissions on file.  *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor."  *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,  255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)).  It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented."  *Id.* at 252.

**III.     Analysis**

The Court has reviewed the pleadings and record and does not believe that oral argument would assist in reaching a decision. W.D. Mich. L. Civ. R. 7.2(d).

The essence of this dispute involves a layered insurance scheme wherein BTI staggered its risk incrementally in the following fashion: the first $2 million of any loss remained with BTI (through a $1 million deductible and  $1 million of self-insurance); the next $1 million was insured by Reliance; losses after $3 million were Gulf's responsibility.  Thus, as stated earlier the attachment

point for the Gulf policy was $3 million; however, the question for the Court to answer is whether the existence of a MCS-90 endorsement alters Gulf's obligations as an umbrella insurer.

### A.    The MCS-90 Endorsement.

The Court of Appeals found that a material issue of fact existed as to whether the BTI-Gulf insurance policy contained a MCS-90 endorsement. *Kline*, 98 Fed. Appx. at 471. The parties have submitted lengthy briefs, accompanied by numerous exhibits, which mostly work to contradict or refute the other's submission. If a material issue of fact existed on appeal—one certainly exists now—as the parties' efforts have only galvanized the Court of Appeals' assessment.

Historically, interstate roadway carriers had taken advantage of a loose regulatory structure whereby trucks were leased or interchanged to avoid safety regulations and to shirk financial responsibility for the resulting accidents. *Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.*, 868 F.2d 357, 362 (10th Cir. 1989) (internal citations omitted). Congress responded by authorizing the Interstate Commerce Commission to promulgate regulations to curb these abuses. *Id.* One such regulation requires interstate carriers to maintain insurance or a surety to pay any judgment recovered against it as a result of its accidents. *Id*; *see also supra* note 4. The MCS-90 is a form endorsement included in the interstate carrier's insurance policy that ensures someone will pick up the tab when the public is injured by the carrier's accident and the policy terms deny coverage.

The endorsement provides in pertinent part that:

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 . . . . *It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of the*

> *policy herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.*

*Kline*, 98 Fed. Appx. at 474 (citing 49 C.F.R. § 387.15 (1995)) (emphasis in original).

The public policy goals behind the MCS-90 endorsement also guide the Court's analysis. "It is well established that the primary purpose of the MCS-90 [endorsement] is to assure injured members of the public are able to obtain judgment from negligent authorized interstate carriers." *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 857 (9th Cir. 2000); *Harco Nat'l Ins. Co. v. Bobac Trucking Inc.*, 107 F.3d 733, 736 (9th Cir. 1997) (referencing *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 611 (5th Cir. 1989)) ("The purpose of the MCS-90 is to protect the public, not create a windfall for the insured."). With this public policy in mind, the Court turns to the effect a MCS-90 has on an umbrella insurer.[5]

When construing a MCS-90 endorsement's effect on an insurance policy, the great weight of authority have found that it operates as a suretyship for the benefit of the public. *See, e.g., Travelers Indem. Co. v. Western Am. Specialized Trans. Co. Inc.*, 409 F.3d 256, 260 (5th Cir. 2005) (approving of district court's characterization of a MCS-90 endorsement as a suretyship); *Canal Ins. Co. v. Distribution Servs. Inc.*, 320 F.3d 488, 490 (4th Cir. 2003) (". . . MCS-90 endorsement creates a suretyship by the insurer to protect the public when the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured."); *Canal Ins. Co. v. Carolina Cas. Ins. Co.*, 59 F.3d 281, 283 (1st Cir. 1995) ("we consider the [MCS-90] endorsement to be, in effect, suretyship by the insurance carrier to protect the public—a safety net . . . . [I]t simply covers

---

[5] The Court notes that this is an issue of first impression in this Circuit, and further notes that it knows of no court of any jurisdiction that has had this precise issue before it.

the public when other coverage is lacking."); *Harco*, 107 F.3d at 736 (approving of the district court's comparison of an insurers obligation under a MCS-90 endorsement to that of a surety).

A suretyship is not insurance. Insurance is a contractual relationship whereby the insurer agrees to indemnify the insured against loss, damage or liability caused by an unknown or contingent event. *United States v. Tilleraas*, 709 F.2d 1088, 1091 (6th Cir. 1983). The insured purchases the insurer's promise to indemnify him with his premium payments. Conversely, a surety promises to assume the responsibility for the satisfaction of an obligation incurred by the principal should he fail to pay the obligee. *Id.* (citing 74 Am. Jur. 2d *Suretyship* § 171 (1974)). Implicit in this arrangement is the principal's obligation to reimburse the surety for the amount he pays. *Id.* A suretyship has three parties; a principal, an obligee, and a surety. *Will H. Hall & Son, Inc. v. Ace Masonry Const., Inc.*, 260 Mich. App. 222, 228-29 (2003) (citing *In re Forfeiture of United States Currency*, 172 Mich. App. 790, 792 (1988)). Thus, a MCS-90 endorsement creates a suretyship between an interstate carrier (principal), the injured member of the public (obligee), and an insurer (surety).

Under the MCS-90 endorsement, an insurer's obligations to act as a surety are triggered when the policy to which it is attached does not provide coverage to the insured. *Minter v. Great Am. Ins. Co.*, Nos. 04-10324 and 04-10834, 2005 WL 2010056 at *11 (5th Cir. Aug. 23, 2005). Although *Minter* involved an assessment of different factual issues,[6] the Court finds the legal principles espoused persuasive and analogous to this case. In *Minter*, after a settlement, the plaintiff

---

[6] Indeed, every case cited by the parties and the Court involves the interpretation of a MCS-90 endorsement under a different set of facts than the ones before this Court. *See also supra* note 5. The Court recognizes that dicta is not precedential and that facts and holdings make law, not judicial phrasings; however, the Court, upon review of the parties' cited cases and its own review, found nothing in existing case law to guide its inquiry with any precision.

sued the defendant umbrella insurer seeking satisfaction of a settlement with a commercial roadway carrier. The carrier had primary insurance coverage of $1 million for each accident and excess coverage when that $1 million limit was exhausted. The Fifth Circuit Court of Appeals found that the umbrella insurer's obligations as a surety were not triggered because the "[primary] policy not only provided coverage but provided the maximum amount under the policy." *Id.* (citing *T.H.E. Ins. v. Larsen Intermodal Servs. Inc.,* 242 F.3d 667, 672 (5th Cir. 2001)) (other citations omitted). The court further held that "[b]ecause the [primary] policy exhausted its coverage limit, coverage does not exist under the MCS-90 endorsement" and therefore, the umbrella insurer's obligation as a surety was not triggered. *Id.*

In this case, Gulf's MCS-90 endorsement obligation as a surety was not triggered. BTI undertook an obligation to self-insure its own risk up to $1 million and was effectively a primary insurer. BTI also had a $1 million deductible. Gulf is quick to point out, and the Court agrees, that neither Gulf, Reliance, nor BTI have denied coverage. BTI's self-insurance scheme—though unfortunately unable to pay Plaintiff its portion of her $3.2 million settlement—did cover the accident by its terms and BTI made no effort to deny coverage. Under the next layer of insurance, Reliance paid $1 million pursuant to its policy. Lastly, Gulf, as an umbrella insurer paid the remaining $200,000. Thus, BTI was covered for any public liabilities it may have incurred by its drivers and the public policy goals of the MCS-90 endorsement were not triggered.

The Court is mindful of public policy goals behind a MCS-90 endorsement, but nevertheless is not of the opinion that the endorsement operates to force an umbrella insurer to cover gaps made by the insolvency of underlying carriers. *Revco D.S. Inc. v. Gov't Employees Ins. Co.*, 984 F.2d 154, 155 (6th Cir. 1992). At most a MCS-90 endorsement simply assures that an accident causing truck

is covered when an insurance policy is written to exclude it. *See Nueva*, 229 F.3d at 860 (MCS-90 expands policy to cover permissive user not covered in underlying terms); *Adams v. Royal Indem. Co.*, 99 F.3d 964, 971 (10th Cir. 1996) (holding the same). The endorsement only becomes effective when an insurer has a valid defense based on an unfulfilled condition in the policy. The endorsement's public policy is not implicated when coverage is provided but not paid by a primary insurer. Therefore, because insurance coverage existed at the time of the accident and no insurer has denied coverage, this Court decides as a matter of law that the MSC-90 endorsement does not require Gulf as an umbrella insurer to act as a surety—its excess obligation was simply not triggered beyond the $200,000 it has paid.

The Court finds that Gulf has satisfied its obligation under the BTI-Gulf insurance policy, even if a MCS-90 endorsement were included in said policy, and therefore, summary judgment will issue in its favor.

### B. Plaintiff's Garnishment Claim.

Plaintiff asserts that Gulf willfully and knowingly filed a false garnishee disclosure when Gulf claimed it owed Plaintiff $200,000. This Court has found that as a matter of law the existence of a MCS-90 endorsement does not effect Gulf's status as an umbrella insurer, and therefore, Gulf did not willfully and knowingly file a false garnishee disclosure. The Court will deny Plaintiff's claim for false garnishment disclosure.

### C. Plaintiff's Statutory Bad Faith Claims (Uniform Trade Practices Act).

Despite raising the issue on appeal, Plaintiff has declined to brief this claim in her current Motion for Summary Judgment. Notwithstanding, Plaintiff's neglect is of little moment as she has failed to demonstrate to this Court how any of Gulf's conduct could be construed as unfair,

unconscionable, or deceptive, especially in light of the Court's findings that Gulf has satisfied its insurance obligation to Plaintiff. The Court will deny Plaintiff's statutory bad faith claim.

### E. Plaintiff's Breach of Contract Claims.

Because the Court has found that Gulf satisfied its obligations under the BTI-Gulf insurance policy, no breach of contract may follow. The Court will deny Plaintiff's breach of contract claim.

## IV. Conclusion

Therefore, the Court will grant Defendant Gulf's Motion for Summary Judgment on all remaining counts because, even though the Court finds that a material issue of fact remains as to whether a MCS-90 endorsement was included in the BTI-Gulf policy, the Court finds that Gulf has satisfied its obligation under the BTI-Gulf insurance policy. The Court will deny Plaintiff's Motion for Summary Judgment. A Judgment consistent with this Opinion will be entered.


Dated in Kalamazoo, MI:                         /s/Richard Alan Enslen
September 12, 2005                              Richard Alan Enslen
                                                Senior United States District Judge